UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

OMAR E. ESCOBAR,                                     Case No. 11-71114-ast
                                                     Chapter 7
                              Debtor.
--------------------------------------------------------X
In re:

RICHARD M. FREDERICK and                             Case No. 11-71135-ast
YVETTE D. FREDERICK,                                 Chapter 7

                              Debtors.
--------------------------------------------------------X

**MEMORANDUM OPINION GRANTING MOTIONS FOR RELIEF FROM STAY**

Issues Before the Court and Summary of Ruling

Pending before the Court are motions seeking relief from the automatic stay which touch upon issues that have been the subject of numerous recent federal and state court decisions regarding who has the right to seek to foreclose against residential property, particularly following the collapse of the sub-prime mortgage market. Each case[1] here presents a servicing agent acting on behalf of an owner or holder of a promissory note secured by a lien against residential real property seeking stay relief in order to continue a foreclosure action which was pending as of the petition date. In each case, the owner or holder of the promissory note and assignee of the mortgage at issue was a member of the Mortgage Electronic Registration System a/k/a MERS program ("MERS"), and claims rights under mortgage assignment executed by MERS, either directly to it or within its chain of title of the mortgage.

The chapter 7 trustee, but not the debtors, objected to the stay relief motion in each case, and presented a narrowly drawn challenge to lien validity and standing to seek stay relief. This

---

[1] This Court combined oral argument on the motions filed in these cases to preserve judicial resources and to better promote efficiencies and economies for the parties, as the legal issues presented by these motions appeared to be related, if not substantially related, and no apparent factual disputes were before the Court to resolve.

decision, therefore, addresses whether the movants have standing to seek stay relief, and whether they are entitled to stay relief.

For the reasons to follow, this Court concludes that each movant has established its legal standing as a party-in-interest to seek stay relief, and that each has met its burden of proof to obtain stay relief. As further discussed herein, these determinations are not based in any significant respect on the strictures and structures of the MERS system and program, but upon the Bankruptcy Code's requirements under Section 362 and substantive New York State law regarding the rights of the owner and/or holder of a promissory note secured by a lien against real property to seek to foreclose.

<u>Jurisdiction</u>

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (G) and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York dated August 28, 1986.

<u>Facts and Background</u>

<u>The Bankruptcy Cases</u>

*The Escobar Case and Motion*

On February 27, 2011, Omar E. Escobar ("Escobar") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, which was assigned case number 11-71114-ast. Allan B. Mendelsohn, Esq. was appointed as interim Chapter 7 trustee, and thereafter qualified to become the permanent Chapter 7 trustee of the Escobar estate (the "Trustee").

On March 9, 2011, America's Servicing Company ("ASC"), as servicer for HSBC Bank USA, National Association, as trustee for Deutsche Bank ALT 2006-AB3 ("HSBC") filed a motion seeking termination of the automatic stay (the "ASC Motion"). [11-71114, dkt item 10] On March 21, 2011, the Trustee filed an Affirmation in Opposition to the ASC Motion (the

"ASC Opposition"). [11-71114, dkt item 13]  On May 2, 2011, ASC filed an Affirmation with Citation to Legal Authority in Further Support of Motion for Relief from the Automatic Stay. [11-71114, dkt item 15]  On May 19, 2011, a hearing on the ASC Motion and the ASC Opposition was held.  At the conclusion of the hearing, the Court directed that supplemental submissions were to be made by June 1, 2011.  In addition, the Court set June 1, 2011, as the deadline for the parties to file a letter requesting or waiving oral argument.  On June 1, 2011, counsel for ASC filed a letter requesting oral argument on the ASC Motion. [11-71114, dkt item 20]

On June 1, 2011, the Trustee filed a letter memorandum in further support of his position in the ASC Opposition. [11-71114, dkt item 21]

*The Frederick Case and Motion*

On February 28, 2011, Richard M. Frederick and Yvette D. Frederick ("Frederick" and collectively, the "Fredericks") filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code, which was assigned case number 11-71135-ast.  Allan B. Mendelsohn, Esq. was appointed as interim Chapter 7 trustee, and thereafter qualified to become the permanent Chapter 7 trustee of the Fredericks' estate (the "Trustee").

On March 30, 2011, Chase Home Finance LLC ("Chase") filed a motion seeking to vacate the automatic stay (the "Chase Motion").  [11-71135, dkt item 12]  On April 15, 2011, the Trustee filed an Affirmation in Opposition to the Chase Motion (the "Chase Opposition"). [11-71135, dkt item 14]  A hearing on the Chase Motion and the Chase Opposition was adjourned at the request of the parties to July 14, 2011.

On June 27, 2011, Chase filed a memorandum of law, clarifying that it is acting as JP Morgan Chase Bank, N.A., successor by merger to Chase Home Finance, LLC, as servicer for

Fannie Mae ("Fannie Mae").[2] [11-71135, dkt item 23]

*The Consolidated Hearing on the Stay Motions*

By Order entered in each case on June 15, 2011, oral argument was combined on the stay motions and scheduled for July 7, 2011 (the "Hearing"). [11-71114, dkt item 22; 11-71135, dkt item 20] At the Hearing, ASC requested permission to supplement the record with an affidavit attesting to its possession of the original note and mortgage at issue in the Escobar case, and the Trustee requested the ability to submit a post-hearing memorandum. The Court set a deadline of August 4, 2011, for supplemental submissions from all parties, which deadline has now passed. The Court has considered these supplemental submissions.

*The Trustee's Objections*

In Escobar, the Trustee's objection was narrowly drawn. The Trustee argued that, because the chain of mortgage assignments to HSBC originates from MERS, and that MERS never held the Escobar Note, the "Mortgage may be unenforceable." [11-71114, dkt item 12] The Trustee does not challenge ASC's authority to act on behalf of HSBC.

In Frederick, the Trustee also presented a narrowly drawn but differently phrased objection; there, the Trustee argued that under "applicable law," if the "mortgage and note are held by different parties, there is no debt to support the mortgage, which would, therefore, be unenforceable." [11-71135, dkt item 14] The Trustee does not challenge Chase's authority to act on behalf of Fannie Mae.

Moreover, the Trustee does not challenge any of the factual allegations made by either ASC or Chase as to execution, endorsement, transfer, assignment, and possession of the original Escobar Note and Escobar Mortgage, or the original Frederick Note and Frederick Mortgage.

---

[2] Fannie Mae is a common abbreviated term for the Federal National Mortgage Association.

Both of the Trustee's objections rely exclusively on the opinion of Judge Grossman of this Court in *In re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y. 2011)**,** and limit the opposition to an alleged unenforceability of the note and mortgage based thereon.

*The Notes and Mortgages: Escobar*

On or about April 5, 2006, Escobar executed a promissory note in the original principal amount of $305,205.00 (the "Escobar Note"), made payable to "Impac Funding Corporation dba Impac Lending Group, a California Corporation" ("Impac"). Escobar, along with Angela Escobar,[3] executed a mortgage of even date to secure payment of the Escobar Note (the "Escobar Mortgage"), by granting a lien against the property located at 18 Pine Street, Central Islip, New York 11722 (the "Escobar Property"). The Escobar Mortgage defines Impac as the Lender, and refers to MERS as follows: "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD." In the granting clause of the Escobar Mortgage, the lien to secure payment of the Escobar Note is granted "to MERS (solely as nominee for Lender and Lender's successors-in-interest) . . .." The Escobar Mortgage was recorded in Suffolk County, New York on September 27, 2007.

On a date unknown, Impac endorsed the Escobar Note in blank—specifically, a Kristy Alcai, acting as authorized signatory on behalf of Impac, endorsed the Escobar Note: "PAY TO THE ORDER OF : _____ WITHOUT RECOURSE." The Escobar Note endorsement bears the signature of a person signing as Kristy Alcai. On or about October 15, 2009, an Elpiniki M. Bechakas, acting on behalf of MERS, executed an assignment of the Escobar Mortgage, purportedly acting on behalf of Impac, to the benefit of HSBC (the "Escobar Impac Mortgage Assignment"). The Impac Mortgage Assignment purports to assign both the Escobar Note and

---

[3] Angela Escobar did not execute the Escobar Note.

Escobar Mortgage to HSBC, and was recorded on November 23, 2009, in Suffolk County, New York. [11-71114, dkt item 10-2]

ASC provided the Affidavit of Beverly De Caro, a Vice President of loan documentation of ASC, in which she affies that ASC began servicing the Escobar loan on January 1, 2007, and that the original Escobar Note and original Escobar Mortgage have been in the possession of Deutsche Bank National Trust Company as custodian for ASC (the "Custodian") since April 12, 2006.  Ms. De Caro further affies that the Custodian has had continual possession of the original Escobar Note and Escobar Mortgage with two exceptions—from April 6, 2009, through September 23, 2009, when the loan file was sent to HSBC to be imaged (copied digitally), and until July 2011 when the Custodian sent the loan file to Steven J. Baum, P.C., as counsel for ASC. [11-71114, dkt item 34]

ASC has also provided the Court with an Attorney Certification executed by Dennis Jose, Esq., as attorney for ASC. [11-71114, dkt item 35]  Therein, Mr. Jose affies that on July 27, 2011, the Baum law firm received the original Escobar Note, bearing the in blank endorsement by Impac on the Note, and the original Escobar Mortgage, and attaches copies thereof.

Finally, ASC provided an Affirmation in Relation to Attorney Certification. [11-71114, dkt item 36] Therein, Mr. Jose "bring[s] to the court's attention that attached to the Note by staple is an assignment dated April 10, 2006, which is dated five (5) days after the origination of the Note." [11-71114, dkt item 36 ¶ 2] This document, titled Assignment of Mortgage, names MERS "as nominee" for Impac as assignor of the Escobar Mortgage and names MERS as assignee of the Escobar Mortgage ( the "Escobar MERS Mortgage Assignment").  This Mortgage Assignment first provides that MERS as nominee for Impac assigns in blank all right, title and interest to the Escobar Mortgage, but also states that MERS as nominee for Impac has endorsed "said note," and that the Escobar Mortgage "and all indebtedness secured thereby" are assigned

and transferred to MERS.  This Mortgage Assignment is also executed by Kristy Alcai, but as authorized signatory on behalf of MERS, not on behalf of Impac.  Mr. Jose further affies that this Mortgage Assignment "does  not appear to have been recorded in the County of Suffolk's records." [11-71114, dkt item 36 ¶3]

*The Notes and Mortgages: The Fredericks*

On or about September 10, 2001, Richard Frederick executed a promissory note in the original principal amount of $417,000.00 (the "Frederick Note") in favor of Fairway Independent Mortgage Corporation ("Fairway").  Mr Frederick also executed a mortgage of even date to secure payment of the Frederick Note (the "Frederick Mortgage"), by granting a lien against the property located at 342 Miller Place Road, Miller Place, New York 11764 (the "Frederick Property").  The Frederick Mortgage defines Fairway as the Lender, and refers to MERS as follows: "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD."  In the granting clause of the Frederick Mortgage, the lien to secure payment of the Frederick Note is granted "to MERS (solely as nominee for Lender and Lender's successors in interest) . . . ."  The Frederick Mortgage was recorded on November 9, 2001, in Suffolk County, New York.

On an unknown date, Fairway endorsed the Frederick Note to AmTrust Bank.  On an unknown date, the FDIC, as receiver for AmTrust Bank f/k/a Ohio Savings Bank, endorsed the Frederick Note in blank—specifically, a "Stephanie Jones," acting as authorized agent, purportedly signed the Frederick Note on behalf of AmTrust: "PAY TO THE ORDER OF _____ WITHOUT RECOURSE." [11-71135, dkt item 12] The Frederick Note bears the signature of a person signing as Stephanie Jones.

On or about November 16, 2007, an Assignment of the Frederick Mortgage was purportedly executed by MERS, as nominee for Fairway, acting through a Beth Cottrell,

assigning the Frederick Mortgage and the Frederick Note to AmTrust.  This assignment was recorded on November 25, 2009, in Suffolk County, New York.  A second assignment of the Frederick Note and the Frederick Mortgage was purportedly executed by a Michele Fegr on or about January 22, 2010, acting on behalf of AmTrust, assigning the Frederick Note and Frederick Mortgage to Chase.  This second assignment was recorded on January 29, 2010, in Suffolk County, New York.

Chase provided the Affidavit of Sherry D. Stafford of Chase, in which she affies that Chase is in possession of the original Frederick Note and the original Frederick Mortgage, that Chase received the original note on January 16, 2008, and received the original mortgage on February 13, 2008, and that Chase has continuously maintained possession of them since receipt. [11-71135, dkt item 24]  Chase also provide an Affidavit of Thomas Reardon, a Chase employee, that, based upon a review of Chase's records, it has continuously acted as servicer of the Frederick mortgage since December 4, 2007, when it began to service the loan for AmTrust.[4] [11-71135, dkt item 25]

## Analysis

The automatic stay is among the most basic of debtor protections under bankruptcy law. Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic stay against *inter alia* "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case. " 11 U.S.C. § 362(a)(1).  It is well settled that "any proceeding or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522,

---

[4] Chase also provided an Affidavit of Dan McLaughlin of MERS, but this affidavit plays no part in this Court's decision. [11-71135, dkt item 26]

527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.* (*In re 48th St. Steakhouse Inc.*), 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988); *In re Ebadi*, 448 B.R. 308 (Bankr. E.D.N.Y. 2011); *In re Vela*, No. 09-45134, 2009 WL 2882867 (Bankr. E.D.N.Y. 2009).  This stay, however, is both temporary in duration and subject to being modified or terminated under circumstances set out under the Bankruptcy Code. *See* 11 U.S.C. § 362(c), (d).

*Standing to Seek Stay Relief*

 All parties agree that standing is a prerequisite to seeking stay relief.  This Court will, therefore, begin by defining the parameters of the standing question presented.  First, the Trustee does not challenge a mortgage servicer's standing to seek stay relief, acting as an agent of the purported owner or holder of a promissory note or mortgage.  Second, no challenge is asserted by the Trustee to the notion that a party affected by the automatic stay may seek relief from the stay, nor does the Trustee assert that either ASC or Chase is not prohibited by the stay from continuing the state court foreclosure actions at issue.

 The question presented on standing, therefore, is what evidence must a party seeking stay relief bring forward to demonstrate an adequate interest in the property at issue for a bankruptcy court to consider granting relief from the stay.  The resolution of this question turns on an analysis of Section 362(a) of the Bankruptcy Code, which imposes an automatic stay on all litigation against the debtor, as well as "any act to create, perfect, or enforce any lien against property of the estate[;]" Section 362(d), which provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay[;]" and Section 362(g), which provides that the burden of proof at any hearing on a stay relief motion on the issue of debtor's equity in the property is on the movants, but that "the party opposing relief has the burden of proof on all other issues." 11 U.S.C. §§ 362(a), (d), (g).

Resolution of the standing issue also requires consideration of the generally non-preclusive effect of stay relief litigation and the limits on such litigation imposed by Congress; that is, if a bankruptcy court grants a relief from stay motion, it is generally not determining that the movant holds a valid, perfected, and enforceable lien, just as denying a stay relief motion generally does not constitute a determination that the movant does not hold a valid, perfected and enforceable lien. *See Grella v. Salem Five Cent. Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994) *and In re Vitreous Steel Prods.*, 911 F.2d 1223, 1232 (7th Cir. 1990) (holding that validity of liens issues are not generally involved in relief from stay proceedings).  Rather, Congress intended that stay relief litigation be summary in fashion and expeditious in time.  This is due in part to the stay being an injunction imposed by the mere filing of a bankruptcy case, and the recognition that granting stay relief returns the parties to the auspices of a court of competent jurisdiction to determine, on the merits, the relative rights, liabilities and responsibilities of the parties.  Congress manifested this intention, in part, by essentially requiring that stay relief motions be heard and determined within thirty days from filing of the motion, unless the court determines within such thirty days that the party opposing stay relief has demonstrated a "reasonable likelihood" that it will prevail at the conclusion of a final hearing; such a final hearing is to then be held within thirty days thereafter.  11 U.S.C. § 362(e).  Further, Congress, and the United States Supreme Court through the Rules Enabling Act, 28 U.S.C. § 2075, specified in Bankruptcy Rule 7001(2) that a party seeking a judicial determination of the validity, enforceability, priority or extent of a lien or other interest in property must generally seek such relief through the filing of an adversary proceeding.[5]

    Further, lift stay litigation is not preclusive in the same manner as claims litigation; that

---

[5] Rule 7001(2) excepts out from the requirement of an adversary proceeding when a debtor is proceeding under Rule 4003(d) to avoid a lien against or transfer of exempt property under Bankruptcy Code Section 522(f).

is, a party in interest may object to a proof of claim filed by a creditor and obtain a determination

allowing or disallowing the claim. *See* 11 U.S.C. § 502; FED. R. BANKR. P. 3001, 3002, 3007,

3008. Specific to the situation here, if a note holder or owner, or mortgagee, or servicer acting on

behalf thereof, files a proof of claim under which it asserts a lien against property of the estate, a

debtor, trustee, or party in interest may object to the claim and seek a determination that the

claimant is not entitled to enforce the note or mortgage at issue, or that the note or mortgage are

not enforceable against the debtor or the estate; a bankruptcy court may make such a

determination after notice and a hearing. *See* 11 U.S.C. § 502(b)(1); *see generally In re Tender

Loving Care Svs., Inc.*, 562 F.3d 158 (2d Cir. 2009).

      Thus, granting or denying a stay relief motion is not and should not be considered a

determination of the ultimate enforceability or unenforceability of the note and lien at issue.

Conversely, a lift stay motion cannot be brought by a stranger to the case. Congress requires

under Section 362(d) that a lift stay motion be brought by a "party in interest." However, neither

the Bankruptcy Code nor Rules not define that term. Rule 17 of the Federal Rules of Civil

Procedure, which does apply to contested matters such as stay relief motions by virtue of

Bankruptcy Rules 7017 and 9014, requires that an "action must be prosecuted in the name of the

real party in interest." FED. R. CIV. P. 17; FED. R. BANKR. P. 7017, 9014.

      Thus, the level of proof necessary to demonstrate standing to seek stay relief to

commence or continue a mortgage foreclosure action must be somewhere along the spectrum of

providing some evidence of a litigable right or colorable claim at one end, to, at the other end,

demonstrating that the movant holds a valid, perfected and enforceable lien and more likely than

not will prevail in the underlying litigation stayed by the bankruptcy filing.

      In *In re Mims*, 438 B.R. 52 (Bankr. S.D.N.Y. 2010), the bankruptcy court denied a motion

for relief from stay to continue a mortgage foreclosure action based, in part, on standing. After

examining the Bankruptcy Code and Rules, and the evidence before him, Judge Glenn concluded that "Because Wells Fargo has not offered evidence that it owns the original Note, Wells Fargo lacks standing to foreclose on the Mortgage and has therefore failed to demonstrate it is the holder of a claim." *Mims*, 438 B.R. at 56.  The court's analysis therein was based, in part, on substantive New York law as to who has the right to foreclose and pursue related state law remedies, and, in part, on a construction of "party in interest" as requiring that the movant be a creditor as defined under Section 101(10) of the Bankruptcy Code. *Id.* at 55 (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)(holding that stay relief may only be sought by a creditor or the debtor).  *Mims* also noted that "Under New York law foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Mims*, 438 B.R. at 56.

*Lift Stay Level of Proof*

The determination of standing being present or absent may be dependent on the level of proof required.  The Ninth Circuit Bankruptcy Appellate Panel ("BAP") recently addressed in great detail this issue of the level of proof necessary to establish standing to seek and obtain stay relief in the residential mortgage lift stay context. *See In re Veal*, —B.R.—, 2011 WL 2652328 (9th Cir. B.A.P. June 10, 2011).  At issue in *Veal* were both a lift stay motion by a purported mortgage and note assignee, and an objection to the purported assignee's proof of claim.  Critical to both issues was whether "the appellee established its standing as a real party in interest to pursue the relief it requested." *Veal*, —B.R.—, 2011 WL 2652328 at *1.  As for stay relief, the *Veal* BAP held "that a party has standing to seek relief from the automatic stay if it has a property interest in, or is entitled to enforce or pursue remedies related to, the secured obligation that forms the basis of its motion[.]" The BAP held that the alleged assignee of a Chapter 13 debtors' mortgage, which presented evidence solely of an assignment of the mortgage but no evidence

that it or its agent had possession of the underlying note, did not establish that it had standing to seek stay relief as to the mortgaged property given it relative rights under applicable state law.[6]

The *Veal* BAP analyzed standing from both a constitutional and a prudential standpoint. Constitutional standing "requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." *Veal*, —B.R.—, 2011 WL 2652328 at *4.   The BAP termed this a relatively minimal requirement, and further stated that even if parties "meet the constitutional minima for standing, this determination does not end the inquiry. They must also show they have standing under various prudential limitations on access to federal courts." *Id.* at *5.   Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Id.* (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)).

Next, the BAP linked prudential standing to the real party in interest doctrine under Rule 17 of the Federal Rules of Civil Procedure, noting that debtors sought to invoke "prudential standing principles which generally provide that a party without the legal right, under applicable substantive law, to enforce an obligation or seek a remedy with respect to it is not a real party in interest." *Id.* (internal citation omitted).   The BAP held that the real party in interest doctrine "melds procedural and substantive law; it ensures that the party bringing the action owns or has rights that can be vindicated by proving the elements of the claim for relief asserted . . . [and] ensures that the person defending the action can preclude anyone from ever seeking to vindicate, or collect on, that claim again." *Veal*, —B.R.—, 2011 WL 2652328 at *6.  In so holding, the BAP openly disagreed with the Wright, Miller & Kane treatise on Federal Practice and Procedure

---

[6] This analysis was based on the Uniform Commercial Code as enacted in Illinois and case law decided thereunder, based on a choice of law clause in the underlying note and mortgage. *Id.* at 13 n. 32.

[Civil § 1542], which "maintains that the third party standing doctrine and the real party in interest requirement are legally distinct[,]" noted the limited claim preclusive effect of lift stay litigation, and acknowledged that the standing necessary to seek stay relief is the colorable claim standard, under which "a party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *Id.* at *11 (internal citations omitted).  Thus, the BAP established the standard for prudential standing by merging the bankruptcy party in interest standard requiring a movant to make out a colorable claim with a demonstration by the movant under Rule 17 of its ability to ultimately prevail on the merits. *Id.* at *13.  The BAP then reversed the bankruptcy court's order granting relief from stay, stating that "the final purported assignment of the Mortgage was insufficient under Article 9 to support a conclusion that [the mortgagee] holds any interest, ownership or otherwise, in the Note." *Id.* at *14 (citing footnote omitted).  The mortgagee needed to own these rights under Illinois law for a "threshold showing of a colorable claim to the Property that would give it prudential standing to seek stay relief or to qualify as a real party in interest." *Id.*[7]

    *Veal* and *Mims* rely to differing degrees upon applicable state law for the threshold determination of standing—that is, of the demonstration of a prudential right to seek stay relief. However, whether expressed as a colorable claim or as a substantial likelihood of success in the underlying state court litigation, a note or mortgage assignee must demonstrate rights to proceed

---

[7]  On the issue of the debtors' objection to the servicer's proof of claim, the BAP noted the Supreme Court's holding in *Katchen v. Landy*, 382 U.S. 323 (1966), which upheld the preclusive effect of a claims litigation determination made by a bankruptcy court. *Veal*, —B.R.—, 2011 WL 2652328 at *14.  "In short, a claims objection proceeding in bankruptcy takes the place of the state court lawsuit or other action because such actions are presumptively stayed by the operation of § 362." *Id.* The court remanded the case for further findings on the alleged servicing agent's standing to file a proof of claim. *But see In re Minbatiwalla,* 424 B.R. 104 (Bankr. S.D.N.Y. 2009)(finding assignee of note and mortgage has standing to file a proof of claim on its own and servicer has standing to file a proof of claim on behalf of the holder or assignee of a note and mortgage; however, prima facie validity of claim depends on claim being filed in accordance with applicable rules); *In re Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008)(finding mortgage servicer has standing to file a proof of claim on behalf of the holder of a note and mortgage).

under state law as against the property at issue to have bankruptcy standing. As noted in *Mims*, a foreclosure of a mortgage under New York law may not be brought a party who does not have the right to enforce the underlying note for which the mortgage serves as collateral. *Mims*, 438 B.R. at 56.

Therefore, given the summary and expedited nature of stay litigation, and its non-preclusive effect, the evidence necessary to establish standing to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage; however, standing should not require evidence which would be necessary to prevail over a claim objection or to prevail in an adversary proceeding asserting that the claimant does not hold a valid, perfected and enforceable lien.[8]

In the context of these cases, therefore, an analysis of substantive New York law is required to determine what the level of proof would be for ASC and Chase to commence and/or continue, but not necessarily to prevail in, a state court foreclosure action.

*Foreclosure Standing Under New York Law*

Recently, in *Bank of New York v. Silverberg*, the Second Department of the New York Appellate Division[9] addressed foreclosure standing, and held that a plaintiff asserting rights as a mortgagee did not have "standing to commence a foreclosure action when that party's [mortgage] assignor [MERS] was listed in the underlying mortgage instruments as a nominee and mortgagee

---

[8] This Court recognizes that adopting this standard likely departs from the *Veal* analysis.

[9] *See* 22 N.Y. COMP. CODES R. & REGS. § 670 *et seq*. Appeals taken from decisions of ten New York State supreme courts, including the supreme courts for Suffolk and Nassau counties, are assigned to the Second Department of the New York Appellate Division. Bankruptcy cases for individual debtors who reside in Suffolk and Nassau counties are assigned to judges who sit in Central Islip, such as the undersigned. Thus, the *Silverberg* decision bears significant precedential influence on foreclosure proceedings within the same geographic jurisdiction this Court serves.

for the purpose of recording, but was never the actual holder or assignee of the underlying notes."

*Id.* at *1. The *Silverberg* court summarized the law in New York generally as follows: "once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note[,]" but "a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it[.]" *Bank of N.Y. v. Silverberg*, —N.Y.S.2d—, 2011 WL 2279723 *4 (N.Y. App. Div. June 7, 2011)(internal citations omitted).

Silverberg followed a long, long line of New York cases which held or stated that, as a general matter, once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note.  *See, e.g.*, *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674, 838 N.Y.S.2d 622 (N.Y. 2007).[10]   Similarly, New York has long recognized that assignment of the mortgage carries with it no rights to enforce the debt.  "[A] transfer of the mortgage without the debt is a nullity, and no interest is acquired by it." *Merritt v. Bantholick,* 36 N.Y. 44, 45 (N.Y. Ct. App. 1867).[11]  Judge Glenn in *Mims* similarly so stated, referencing 140 years of New York law that "a mortgage is but an incident of the debt which it is intended to

---

[10] *See also Deutsche Bank Nat'l Trust Co. v.  Pietranico,* 2011 WL 3198834 at * 11 (Slip Op. NY Supp. Suffolk County July 27, 2011) (finding under New York law the owner or holder of the promissory note holds the rights to enforce the associated mortgage and to commence a foreclosure action; mere physical possession of the promissory note endorsed in blank provides presumptive ownership of the note by the holder, and the holder of the note is the presumptive owner of the underlying mortgage); *Weaver Hardware Co. v. Solomovitz*, 235 N.Y. 321, 331–32, 139 N.E. 353 (N.Y. 1923) ("[A] mortgage given to secure notes is an incident to the latter and stands or falls with them[.]"); *Smith v. Wagner*, 106 Misc. 170, 178, 174 N.Y.S. 205 (N.Y. Sup. Ct. 1919)("[A]ssignment of the debt carries with it the security therefor, even though such security be not formally transferred in writing"). The Court notes, however, that *Pietranico* is not cited as authority for its alternate holding regarding the authority of MERS to assign the mortgage at issue therein. 2011 WL 3198834 at * 12.

[11] *See also Kluge v. Fugazy*, 536 N.Y.S.2d 92 (N.Y. App. Div. 1988)(holding that plaintiff, the assignee of a mortgage without the underlying note, could not bring a foreclosure action); *Flyer v. Sullivan,* 134 N.Y.S.2d 521 (N.Y. App. Div. 1954)(holding that mortgagee's assignment of the mortgage lien, without assignment of the debt, is a nullity).  A "mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation." *FGB Realty Advisors v. Parisi*, 265 A.D.2d 297, 298, 696 N.Y.S.2d 207(N.Y. App. Div. 1999).

secure. . .." *Mims*, 438 B.R. at 56. As Judge Grossman noted in *Agard*, "Under New York law, Movant can prove that U.S. Bank is the holder of the Note by providing the Court with proof of a written assignment of the Note, or by demonstrating that U.S. Bank has physical possession of the Note endorsed over to it." *Agard*, 444 B.R. at 247 (internal citations omitted).

Thus, New York law has long recognized that the rights under a mortgage lien are beneficially transferred to the assignee of a promissory note, without the execution of a written assignment of the mortgage, and even without a written assignment of the mortgage. However, the obverse is not true; an assignment of the mortgage does not effect a transfer of the debt. Said otherwise, and perhaps by oversimplification, the lien follows the debt, but the debt does not follow the lien.

Here, each movant has demonstrated physical possession of the original Notes, each endorsed in blank, in addition to physical possession of the original Mortgages. An endorsement in blank renders the note as bearer paper under the U.C.C. as enacted and in effect in New York, and negotiation of bearer paper is effectuated by delivery.[12]  N.Y.U.C.C. Law §§ 3-302(1), 3-204(2).[13]

Further, to determine "holder or assignee" status as to a note, the *Silverberg* court rejected the notion that a plaintiff must "provide *proof of recording* of the corrected assignment of the mortgage prior to the commencement of the [foreclosure] action," and stated that "this particular

_____

[12] No party suggested that any state's law other than New York's should apply here.

[13] New York's version of the Uniform Commercial Code has remained virtually unchanged since its adoption in 1962. *See* N.Y. Sess. Laws 1962, ch. 553 (effective Sept. 27, 1964). Therefore, as the standing issue requires a state law analysis, different results may follow in jurisdictions analyzing transactions not governed by the New York UCC.  Property rights are generally determined in accordance with applicable state law.  *Butner v United States*, 440 U.S. 48, 54(1979).

contention is without merit, as an assignment of a note and mortgage need not be in writing and can be effectuated by physical delivery." *Id*. at *4 (emphasis in original).  As noted in *Silverberg*, "[i]n a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced[.]" *Silverberg*, —N.Y.S.2d—, 2011 WL 2279723 *3 (internal citations omitted).

This Court concludes that the level of proof necessary to commence a foreclosure action under New York law, as stated in *Silverberg*, is the appropriate level of proof necessary to confer standing to seek stay relief.  Thus, in cases such as these, where the movant claims rights as a secured creditor by virtue of an assignment of rights to a promissory note secured by a lien against real property, it must provide satisfactory proof of its status as the owner or holder of the note at issue.  Here, the Movants have met this burden of proof through their uncontroverted affidavit testimony that they are holders of the Notes by virtue of possession of the original notes executed with endorsements in blank (pay to the order of ___).

Whether movants can ultimately prevail in the state foreclosure action and obtain a judgment of foreclosure is for the state courts to determine. For example, and for purposes of this opinion, this Court does not treat the Escobar MERS Mortgage Assignment stapled to the Escobar Note as a special indorsement of the note to MERS under N.Y.U.C.C. LAW § 3-204, nor as an allonge intended as a special indorsement to MERS. Section 3-204(3) allows a holder of a note indorsed in blank to "convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement." N.Y.U.C.C. LAW § 3-204(3).  Section 3-202(2) of the New York Uniform

Commercial Code allows negotiation to occur by an indorsement written on the instrument "or on a paper so firmly affixed thereto as to become a part thereof," typically referred to as an allonge. N.Y.U.C.C. Law § 3-202(2).  The Escobar MERS Mortgage Assignment does not appear to be a special indorsement consistent therewith.  This Mortgage Assignment is not executed by Impac on its own behalf, but, instead, is purportedly executed by MERS as nominee for Impac; this assignment purports to both be an in blank indorsement or assignment as well as a restrictive indorsement or assignment; this Assignment states that MERS as nominee for Impac "has endorsed said note," when, in fact, it had not; Impac indorsed the note in its own behalf. Further, none of the affirmations or affidavits provided to the Court expresses an intention that the stapling of this Mortgage Assignment to the Escobar Note was intended as an allonge to the Escobar Note in accordance with N.Y.U.C.C. § 3-202(2).  Moreover, for MERS to claim rights to enforce the Escobar Note on its own behalf is inconsistent with the granting clause of the Escobar Mortgage, which provides that the lien to secure payment of the Escobar Note is granted "to MERS (solely as nominee for Lender and Lender's successors-in-interest)," and with the Escobar Impac Mortgage Assignment which MERS executed on or about October 15, 2009, purportedly acting on behalf of Impac, to assign the Escobar Mortgage and indebtedness secured thereby to HSBC.  Finally, the Trustee does not contend that MERS ever became the owner or holder of the Escobar Note; to the contrary, the Trustee alleges the Escobar Note was separated from the Escobar Mortgage as his basis for challenging the enforceability of the Escobar Mortgage.

The state courts, as courts of competent jurisdiction, can well make the ultimate determinations as to whether ASC, on behalf of HSBC, and Chase, on behalf of Fannie Mae, are

entitled to judgments of foreclosure. However, evidence to the effect provided herein creates a

colorable claim on behalf of ASC and Chase to relief before a state court of competent

jurisdiction, and thus satisfies movants' burden of establishing party in interest standing under

Section 362(d) to seek stay relief.[14]

*Substantive Right to Stay Relief*

Having established standing to seek stay relief, the second question is whether movants

have demonstrated entitlement to stay relief. The Trustee did not challenge movants' evidence of

the Debtors' defaults under the respective notes and mortgages. No effective reorganization is

possible in a chapter 7 case. Movants met their burden of proving each debtor's lack of equity in

the respective properties at issue. Thus, movants have each satisfied their respective burdens to

obtain stay relief under Section 362(d)(2) (in Frederick) and under Sections 362(d)(1) and (d)(2)

(in Escobar).

*Distinguishing Agard*

Finally, because the Trustee's objections rely exclusively on *Agard*, a comparison of the

issues here to the issues in *Agard* is appropriate. In *Agard*, the Court provided a detailed and

thoughtful analysis of MERS authority, or lack thereof, to execute assignments of mortgages that

pass through the MERS system. Select Portfolio Servicing, Inc. ("Select Portfolio"), as servicer

for U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006-

FF12, Mortgage Pass-Through Certificates, Series 2006-FF12 ("U.S. Bank") sought stay relief to

continue a pre-petition foreclosure action. Debtor, Mr. Agard, filed limited opposition to the

---

[14] Whether this level of proof would be adequate for a purported lien holder to prevail on an objection to a filed proof of claim, or in an adversary proceeding seeking to establish lien validity, priority and enforceability, is not before this Court, and therefore not reached by this opinion.

motion, contesting Select Portfolio's standing to seek relief from stay, and raised "a fundamental question as to whether MERS had the legal authority to assign a valid and enforceable interest in the subject mortgage." *Agard,* 444 B.R. at 235.  Select Portfolio, on behalf of U.S. Bank, responded that its standing to seek relief from stay was established by virtue of a judgment of foreclosure and sale entered in its favor by the state court prior to the filing of the bankruptcy. Judge Grossman concurred, stating that "by application of either the *Rooker-Feldman* doctrine, or *res judicata* . . . this Court must accept the state court judgment of foreclosure as evidence of U.S. Bank's status as a creditor secured by the Property." *Id.* at 236.

However, in light of having pending at that time "dozens" of stay relief motions filed by MERS assignees, the Court provided an extensive analysis and criticism of MERS's claim that the business model it constructed and implemented imbued it with general and pervasive authority to assign mortgages within the MERS family members.  Relying on long standing New York law that requires that an assignor of a note and mortgage must possess rights in those instruments to effectively assign rights under either, the Court stated that "even if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal." *Id*. at 254.

These cases are quite unlike *Agard* for the following primary and material reasons: (1) neither *res judicata* nor *Rooker-Feldman* applies because no prepetition judgment of foreclosure exists in favor of either ASC or Chase; and (2) each movant has established its status as a holder of the original note and mortgage executed by each debtor and the rights to enforce the respective

notes; (3) both movants assert, and the Trustee concedes, that MERS never held physical possession of the notes and mortgages; (4) each movant is relying, in part, on its status as holder of the note at issue, and not solely on an assignment of the mortgage; and (5) the original notes and mortgages did not physically separate from each other.  Critically, in *Agard*, the Court found that the movant did not meet its burden of showing "that U.S. Bank, the party on whose behalf Movant seeks relief from stay, is the holder of the Note." *Agard*, 444 B.R. at 246.  That burden has been met here.

As for the Trustee's assertion that a separation of the note from the mortgage can cause the mortgage lien to be rendered unenforceable,[15] the Trustee did not demonstrate that the notes and mortgages did separate here, and was unable to provide any case law turning "can" into "does." The Court provided the Trustee the opportunity to submit post-Hearing briefing specifically addressing whether any court applying substantive New York law had made such a determination.  The Trustee was unable to do so.

---

[15] As noted *supra*, in the Fredericks case, the Trustee specifically alleged that if the "mortgage and note are held by different parties, there is no debt to support the mortgage, which would, therefore, be unenforceable." [11-71135, dkt item 14]   The Trustee was relying on a question left open in *Agard,* as to whether mortgages processed through the MERS system give rise to properly perfected and valid liens if the owner or holder of the note is an independent entity from the beneficial owner of the deed of trust.  *Agard,* 444 B.R. at 247 n.5.

<u>Conclusion</u>

The automatic stay in effect pursuant to Section 362 should be terminated as to ASC and Chase, such that each may take any all action under applicable state law to exercise state law remedies as against the Properties.  Orders consistent herein shall be issued.



Dated: August 22, 2011
     Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**